FILED

2015 Mar-31  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DE-CHU CHRISTOPHER TANG,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **VAXIN, INC., and WILLIAM J.** ) | **CASE NO. 2:13-CV-401-SLB** |
| **ENRIGHT,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This case is before the court on defendants' Motion for Partial Dismissal of Amended

Complaint. (Doc. 19.)[1] Upon consideration of the motion, the supporting and opposing

memoranda, arguments of counsel and the relevant law, the court finds, for the reasons stated

below, that defendants' Motion to Dismiss is due to be granted.

## STANDARD OF REVIEW

A complaint is required to contain a "short and plain statement of the claim showing

that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When a plaintiff alleges fraud

or mistake, the complaint must "state with particularity the circumstances constituting fraud

or mistake." FED. R. CIV. P. 9(b). A defendant may move to dismiss a complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon

---

[1] Reference to a document number, ("Doc. ___"), references to the number assigned each
document as it is filed in the court's record.

which relief may be granted. To survive a 12(b)(6) motion, the complaint "does not need detailed factual allegations"; however, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations and footnote omitted). The plaintiff need not prove his case, but must plead "enough facts to state a claim to relief that is *plausible* on its face."  *Id.* at 570 (emphasis added). Additionally, "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank*, *N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Further, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, "'[u]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.'" *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).  Therefore, though the court must accept all factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted).

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff De-chu Christopher Tang is the scientific founder of Vaxin, Inc. (Doc. 14 ¶ 9.) During his fourteen year employment, he "brought in more than $30 million of federal funding for Vaxin, Inc. as the principal investigator on 19 grants and contracts." (*Id*. at ¶ 11.) One project on which plaintiff worked led to the invention and publication of a "drug-vaccine duo (DVD)," also known as "RAPIT." (*Id*. at ¶ 36, 40.) In 2008, defendant William Enright became CEO of Vaxin. (*Id*. at ¶ 12.) Enright refused to pay for a provisional patent application for the DVD. (*Id*. at ¶ 36.) Enright also instructed plaintiff not to go to a seminar in Shanghai for which plaintiff had received a travel grant, saying that "[a]ll the good conferences can be found in America and Europe." (*Id*. at ¶ 25.) Plaintiff is Asian. (*Id*. at ¶ 8.)

During plaintiff's employment, Enright asked plaintiff to guarantee a $100,000 Regional Planning Commission ("RPC") loan for Vaxin. (*Id*. at ¶ 62.)[3] Plaintiff thought that since the RPC's "core mission" is to support Alabama businesses, Vaxin would have to stay in Alabama for the duration of the loan. (*Id*. at ¶ 62.) Enright told plaintiff that plaintiff would only be responsible for $15,000 of the loan because others would help pay off the loan, although plaintiff does not specify whether this representation was made before or after

---

[2]As noted above, for purposes of deciding the Motion to Dismiss, the court accepts as true all facts alleged in the Amended Complaint.

[3]Paragraph 13 on page 3 of document 14 refers to a $200,000 loan from the RPC. It is unknown whether this is a typographical error and should read $100,000.

plaintiff signed the guarantee on the loan. (*Id*.) At some point, Vaxin began deferring plaintiff's salary. (*Id*. at ¶ 21, 23.)

On March 13, 2012, Enright "unilaterally" fired plaintiff without giving plaintiff any warning or reason for the termination. (*Id*. at ¶ 31, 32, 37, 62.) Enright told plaintiff that he would remain a guarantor on the RPC loan. (*Id*. at ¶ 32.) At some point, near the date of his termination, plaintiff went to a Vaxin secretary's office and took the desktop computer he used during his employment, telling the secretary that he had to "work on important tasks," including publishing papers and filing patent applications. (*Id*. at ¶ 32.) Plaintiff alleges that although only he knows how to identify laboratory materials, he was not allowed to prepare his successor to use the materials, thereby wasting the materials and millions of dollars worth of federally-funded projects. (*Id*. at ¶ 33, 34, 35.) In April 2012, Enright closed Vaxin's Birmingham office and moved the business to Maryland. (*Id*. at ¶¶ 14, 15.) Plaintiff was replaced with a white person. (*Id*. at ¶ 27.)

At an unspecified time, plaintiff grew "suspicious that federal funds were being misused." (*Id*. at ¶ 17.) Plaintiff alleges that as principal investigator on 19 federal grants and contracts, he had a duty to oversee projects. (*Id*. at ¶ 11, 17.) He alleges that defendants were "responsible for providing financial reports pertaining to Plaintiff for periodic review as a default process." (*Id*. at ¶ 17.) Plaintiff never received any financial reports on his grants from defendants. (*Id*.) Once, presumably before he was terminated, plaintiff "told Enright he would be happy to help with audits in the future." (*Id*.) Plaintiff alleges that he requested

financial reports on federal grants and contracts multiple times, once in June 2012, but does not specify whether any requests were made before his termination. (*Id*.) After he was terminated, plaintiff emailed Enright reminding him of plaintiff's alleged duties as principal investigator on federal grants and contracts. (*Id*.) Defendants did not respond to his requests.

On June 1, 2012, plaintiff's counsel sent a letter to Enright demanding, among other things, that plaintiff be paid his deferred salary, accrued sick and vacation time, and that Vaxin buy back plaintiff's stock. (*Id*. at ¶ 41, 50, 54.) On October 3, 2012, defendants' counsel informed plaintiff's counsel that defendants recognized Vaxin's obligation to pay plaintiff his deferred salary, but that Vaxin was "not in a position to begin making any payments." (*Id*. at ¶ 60, 61.)

On February 27, 2013, plaintiff filed a complaint based on the allegations above against Enright and Vaxin. (Doc. 1.) The complaint included causes of action under the False Claims Act ("FCA") and 42 U.S.C. § 1981. (*Id*.) After the United States declined to intervene and the complaint was unsealed, (doc. 5), defendants filed a motion to dismiss, (doc. 10), and an answer, (doc. 9), in which Vaxin counterclaimed for breach of contract, tortious interference, conversion, and breach of fiduciary duty. Plaintiff alleges that "[t]hese counterclaims lack merit and were filed in retaliation for Plaintiff's filing of a lawsuit alleging violations of the False Claims Act and 42 U.S.C. § 1981." (Doc. 14 ¶ 64.) Plaintiff filed an Amended Complaint asserting claims against both defendants for violations of the FCA, retaliation in violation of the FCA, racial discrimination and retaliation under 42

U.S.C. § 1981, breach of contract and breach of implied-in-fact contract, unjust enrichment, and claims against Enright for fraudulent inducement and breach of fiduciary duty. (Doc. 14.) The Amended Complaint rendered defendant's first Motion to Dismiss moot, and defendants have filed a Motion for Partial Dismissal of Amended Complaint. (Doc. 19).

## ANALYSIS

### I. False Claims Act Violations

Defendants argue that plaintiff's cause of action for violation of the FCA should be dismissed for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party to "state with particularity the circumstances constituting fraud or mistake." (Doc. 19 at 8 (citing *United States ex. rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308-09 (11th Cir. 2002))). Defendants point out that the Amended Complaint does not identify the "who, what, where, when, and how" of the fraudulent submission, or under which subsection of 31 U.S.C. § 3729(a) plaintiff is bringing his claim. (Doc. 19 at 9 (citing *Hopper v. Solvay Pharm., Inc*., 588 F.3d 1318, 1328-29 (11th Cir. 2009))).

Neglecting to cite to the United States Code does not bode well for plaintiff's statutory claim. 31 U.S.C. § 3729(a)(1) describes certain ways in which a person can "present" a false claim, or fail to "deliver" money or property from the Government, or make a false record concerning a financial obligation to the government. Plaintiff, on the other hand, is claiming that the fact that Vaxin and Enright did not allow him to review financial statements about ways in which federal grant and contract money was spent "indicates fraud," and that he has

repeatedly sought information to "reveal whether fraud occurred."[4] (Doc. 20 at 2.) It is not a close question: plaintiff has not presented a claim cognizable under 31 U.S.C. § 3729(a)(1), nor has he done so with the requisite factual particularity. For the foregoing reasons, plaintiff's non-retaliation claim for violation of the FCA is due to be dismissed.

The court would normally allow plaintiff to amend his complaint on this count a second time. However, plaintiff is apparently using this litigation to "reveal whether fraud occurred," in an attempt to support or explain his "suspicion" that grant money might have been "misused." (Doc. 20 at 2.) The court finds that granting plaintiff leave to amend his complaint to comply with Rule 9(b) with respect to this claim would be futile; plaintiff cannot, without discovery, allege how a false claim was "*actually submitted.*" *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359-60 (11th Cir. 2006) (emphasis in original) (affirming a dismissal of an FCA claim with prejudice because it failed to comply with Rule 9(b) and explaining that discovery in an FCA suit is not allowed as a means to *identify* claims). Apparently, plaintiff does not even suspect that a false claim was *submitted*. He suspects that funds already obtained from the government through contracts and grants were *misused*. *See Bell v. Dean*, No. 2:09-CV-1082-WKW, 2010 WL 1856086, at *4 (M.D. Ala. May 4, 2010) (noting that misuse of federal funds is insufficient).

---

[4]Essentially, plaintiff is claiming that defendants failed to treat his requests as though he had subpoena power, and that the court should draw an adverse inference from this as to the documents' content.

**II. Claims of Retaliation in Violation of the FCA**

    **a. Against Vaxin**

Vaxin argues that plaintiff fails to state a claim for retaliation under the FCA because plaintiff does not allege that he engaged in activity protected by the FCA before his termination. (Doc. 19 at 12.) Vaxin also argues that plaintiff's "bare allegations" that Vaxin's counterclaims "lack merit" do not plausibly suggest that the counterclaims were retaliatory. (*Id.* at 13.)

Vaxin argues that to engage in activity protected by 31 U.S.C. § 3730(h), "a plaintiff must . . . put [the defendant] on notice that he was taking action in furtherance of an action under the FCA and that litigation was at least a 'distinct possibility' at the time of the plaintiff's actions." (Doc. 19 at 11 (quoting *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010))). Vaxin points out that plaintiff merely requested financial reports (either before or after termination). (Doc. 19 at 12.) Plaintiff argues he had a "right and duty" to review financial reports concerning federal contract and grant money, and that his request to exercise that right and duty "put Defendants on notice of Plaintiff's belief that federal funding for contracts and grants for which he was principal investigator was being fraudulently misused." (Doc. 20 at 3.) Perhaps anticipating this response, Vaxin argues that "[m]erely informing an employer of regulatory violations is not enough [to put a defendant on the requisite notice] because there is no suggestion that the plaintiff is going to report such

non-compliance to government officials or bring his own *qui tam* action." (Doc. 19 at 12 (citing *Karavelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 237 (1st Cir. 2004))).

The first problem is that plaintiff's amended complaint does not actually allege when he first requested to review any financial reports. Therefore, plaintiff cannot show that his termination occurred as a result of his requests.

Even if he did make these requests, or a request, before he was terminated, plaintiff does not allege sufficient facts to show how asserting his "right" to do his "duty" to review financial records concerning federal grant and contract money could have put Vaxin on notice that there was a "distinct possibility" that they would be sued. Alone, his sudden interest in the financial records would not be enough. It would be unreasonable to conclude that Vaxin feared they would be "reported to the government for fraud or sued in a qui tam action by the employee" simply because he requested—as the principal investigator—to be involved in the finances of federal grants and contracts. *See Lymphatx*, 596 F.3d at 1304.[5] Plaintiff does not allege that he indicated to Vaxin that his interest in the records was to see if "unlawful action" had occurred. *See id.* Therefore, his claim based on retaliatory discharge

---

[5]One court has noted that the standard from *Lymphatx* might have been superceded by the 2009 amendments to 31 U.S.C. § 3730(h). *Bell v. Dean*, No. 2:09-CV-1082-WKW, 2010 WL 1856086, at *4 (M.D. Ala. May 4, 2010). This court doubts that the new language, "because of . . . other efforts to stop 1 or more violations of this subchapter" means that the standard has relaxed enough to allow *any* effort (a request) based on *any* suspicion that federal-financed funds have been "misused" to trigger subsection (h) liability. *Bell* notes that a "violation of the FCA cannot be based on the mere misuse of federal funds, but requires some nexus to a false *claim* made to the United States." *Id.* (emphasis in original) (citing *United States v. R&F Props. of Lake County, Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005)).

is due to be dismissed. However, the court will allow him to amend his complaint to allege additional facts, if they exist, that could show the requisite notice.

Addressing plaintiff's claim of retaliatory counterclaims, Vaxin argues that alleging, without more, that the claims "lack merit" does not comply with Rule 8(a)'s requirements as expressed in *Twombly* and *Iqbal*. (Doc. 19 at 13.) Plaintiff responds that counterclaims—apparently, even meritorious counterclaims—can "constitute actionable retaliation if they are filed against an employee in response to the employee asserting statutory workplace rights." (Doc. 20 at 4 (citing *Jacques v. DiMarzio, Inc.*, 216 F. Supp. 2d 139, 141-43 (E.D.N.Y. 2002))).

The FCA would be quite a weapon if it allowed a terminated employee to sue his or her former employer and gave the employee another cause of action *every* time the employer counterclaimed (in effect, granting the employee immunity from suit). *Jacques* is not the license plaintiff would need to claim that sort of power. In its single use of the word "retaliation," the court said:

> the Court *sua sponte* questioned the viability of defendant's counterclaim, characterizing it as an apparent "naked form of retaliation against Jacques, a vulnerable plaintiff who suffers from a significant mental impairment, for filing her lawsuit." The Court afforded defendant's counsel "the opportunity to submit legal authority and evidence to justify [the] counterclaim, if it can, and to explain why Rule 11 sanctions should not be imposed."

*Id.* at 141. The court went on to find that Rule 11 sanctions were justified because the counterclaim was "patently devoid of allegations rising to a colorable claim for any of the tort theories that defendant's counsel has belatedly conjured," and "factually unsupported,

[of a] conclusory lay nature," and failed to plead the requisite elements of a cause of action. *Id.* at 142-43.

One could characterize a frivolous post-termination counterclaim as harassment under 31 U.S.C. § 3730(h)(1). However, plaintiff's legally conclusory statement that Vaxin's counterclaims "lack merit" is insufficient even under a liberal standard. In *Ramos v. Hoyle*, No. 08-21809-CIV, 2009 WL 2849093, at *2 (S.D. Fla. 2009), the court allowed an FLSA retaliation claim to arise from a counterclaim that "had no basis in law or fact." Without endorsing that standard, the court notes that plaintiff does not specify whether Vaxin has any factual basis for its counterclaims. Therefore, plaintiff's claim for retaliatory counterclaims is due to be dismissed.

The court will allow plaintiff to amend his complaint to sufficiently allege that the counterclaims "have no basis in law or fact," but cautions plaintiff that such an allegation can not merely be a denial of legal liability on defendant's counterclaims or a demand of strict proof of the facts. Plaintiff must attack the supporting facts of defendant's counterclaims and allege that they are false or inaccurate,[6] or otherwise show that taking Vaxin's alleged facts as true, at least one of Vaxin's counterclaims has no basis in the law.

---

[6]Should plaintiff choose to allege so, the court reminds him of the requirements of Rule 11(b)(4).

**b. Against Enright**

Enright argues that even if plaintiff could successfully assert a claim for retaliation based on the facts alleged (or those alleged in a second amended complaint), supervisors can not be liable in their individual capacity under 31 U.S.C. § 3730(h) as a matter of law. The court agrees.  "In determining the meaning of a statutory provision, [courts] look first to its language, giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 134 S. Ct. 1158, 1165 (March 4, 2014) (citation and internal quotation marks omitted).

31 U.S.C. § 3730(h) says:

> (h) Relief from retaliatory actions.--
> (1) In general.--Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.
> (2) Relief.--Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

12

The question is this: which retaliators are liable to a party entitled to "[r]elief from retaliatory actions?" While at first glance the passive voice[7] in (h)(1) makes this question difficult, one key is the subsection's contemplation of a relationship. *See Patel v. Wargo*, 803 F.2d 632, 635 (11th Cir. 1986) (noting that the Fair Labor Standards Act (FLSA), in 29 U.S.C. § 206(a), "premises liability on an employer-employee relationship"). While "a *person* may bring a civil action for a violation of section 3729" under § 3730(b)(1) (emphasis added), only "an employee, contractor, or agent" is entitled to bring a claim under § 3730(h). "[D]ischarge, demotion, suspension, threats, harassment, or discrimination in the terms and conditions of employment [] are commonly actions an employer takes against its own employees." *Lawson*, 134 S. Ct. at 1166 (emphasis removed). A supervisor cannot, in his individual capacity, discharge, demote, or suspend an employee.  The court finds that the plain language of § 3730(h) indicates that supervisors are not individually liable for retaliation. Therefore, the court holds that, as a matter of law, Enright cannot be liable in his individual capacity under § 3730(h), and plaintiff's FCA retaliation claim against him is due to be dismissed with prejudice.

### III. 42 U.S.C. § 1981 Retaliation Against Both Defendants

For the same reasons given in section II part a, *supra*, plaintiff's allegation that Vaxin's counterclaims "lack merit" is insufficient to state a claim for relief for § 1981

---

[7]The subject of the verbs "discharged, demoted," etc., is not explicit.

retaliation, and the claim is due to be dismissed without prejudice. As explained, plaintiff should use care in amending his complaint on this count if he chooses to do so.

## IV. Fraudulent Inducement Against Enright

Plaintiff's eighth cause of action is entitled "fraudulent inducement," but the parties have argued it as though it is a claim for fraudulent misrepresentation. Therefore, the court will assume the elements of and precedent concerning fraudulent misrepresentation apply.

"To recover on a claim of fraudulent misrepresentation, [a plaintiff] must establish four elements: (1) a false representation (2) concerning a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result." *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000) (internal citations and quotation marks omitted). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint must set forth "(1) precisely what statements were made . . . (2) the time and place of each such statement and the person responsible for making [them] . . . (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendant[] obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Enright argues that plaintiff fails to allege that he made a misrepresentation of existing fact when asking plaintiff to guarantee the $100,000 loan. (Doc. 19 at 16.) Plaintiff alleges that he was told that he would only be *responsible* for $15,000 of the loan, even though he

was asked to *sign* as a guarantor for a $100,000 loan, "because others would step up to pay for the loan." (Doc. 14 at 11.) That is a representation about a future event.[8]

> An additional burden is added to the party alleging misrepresentation in cases which involve a future act or event. In order for promises or opinions to constitute fraudulent misrepresentations, there must have been at the time the representations were made an intention not to do the act promised, and such promise or opinion must have been given with intent to deceive. A promise, to constitute fraud, must be made with the intent not to perform it.

*Army Aviation Ctr. Fed. Credit Union v. Poston*, 460 So. 2d 139, 143 (Ala. 1984). Plaintiff has not alleged that Enright acted with such intent at the time the statement was made, or provided any specifics from which that intent could be inferred.[9]

Plaintiff's eighth cause of action, for "fraudulent inducement," is due to be dismissed without prejudice because it fails to comply with Rule 9(b) and fails to allege the elements of fraudulent misrepresentation of future event. The court will grant plaintiff leave to amend his complaint to correct the deficiencies.

## V. Breach of Fiduciary Duty Against Enright

Enright argues that plaintiff's claim for breach of fiduciary duty against Enright is due to be dismissed because "it is a derivative claim that can only be asserted on behalf of

---

[8]Plaintiff must realize this, since he repeatedly refers to what "would be" his responsibility. (*See* doc. 14 ¶ 62; doc. 20 at 5.) Plaintiff does not allege that Enright told him the document he was signing made him presently responsible for only $15,000 of the $100,000 loan.

[9]Plaintiff also does not identify a specific time frame in which the statements were made. (*See* doc. 14 at 11.) "During his employment" is not specific enough, and does not clarify whether the allegedly fraudulent statements were made before or after plaintiff signed the loan.

Vaxin," since the breaches the plaintiff alleges (waste, abuse, mismanagement) affect Vaxin as a whole and are not unique to plaintiff as a particular minority shareholder. (Doc. 19 at 17-18.) Enright argues that plaintiff cannot show a "direct fraud" because he cannot trace the harms he allegedly suffered to his status as a minority shareholder. (*Id*. at 19-20.) Plaintiff argues that these actions worked a unique harm on him: interfering with his patent rights, failing to advance the DVD technology which plaintiff had developed as an employee, and deferring his salary.[10] (Doc. 20 at 6.)

Plaintiff does not attempt to explain why interfering with his patent rights and failing to "advance" his inventions are a "direct fraud" on him as a shareholder, and the claims are not obviously supported. In his response to defendants' motion, plaintiff cites only one case, and that for the unremarkable proposition that direct fraud can sustain a direct action. (Doc. 20 at 6 (citing *Green v. Bradley Const., Inc.*, 431 So.2d 1226 (Ala. 1983))). Plaintiff does not allege that he, as opposed to Vaxin, was to be the recipient of the patent to the DVD invention. Plaintiff only alleges that Enright had directed him to file a patent application on the invention. (Doc. 14 ¶ 32.) Plaintiff does not allege that Enright had a fiduciary duty to advance the DVD technology *for plaintiff's benefit,* or that the DVD technology was his personal asset. Rather, plaintiff complains that he was "told by Enright to leave Vaxin without any rights," (Doc. 14 ¶ 40), and alleges that he demanded he be *granted* the patent

---

[10] Plaintiff also argues that Enright's alleged "fraudulent inducement" to sign the guaranty is a direct fraud, but for the reasons given in Section IV, *supra*, this part of his claim fails.

rights for DVD, (*id*. at ¶ 52). If the rights were never his—personally—to begin with, he cannot claim that Enright breached a fiduciary duty to him by not handing them over. To the extent that plaintiff is arguing that Enright wasted the potential of the inventions and patents, "a minority shareholder cannot recover on his own behalf for a director's waste of corporate assets." *Brooks v. Hill*, 717 So. 2d 759, 767 (Ala. 1998).

Depending on the facts, denying salaried employment in a close corporation could be a form of minority shareholder oppression, which in turn is a breach of fiduciary duty. *Brooks*, 717 So. 2d at 767; *Ex parte Brown*, 562 So. 2d 485, 492-93 (Ala. 1990) (citing F.H. O'Neal and R. Thompson, O'Neal's Oppression of Minority Shareholders § 3:02 (2d ed. 1985)); *Fulton v. Callahan*, 621 So. 2d 1235, 1247 (Ala. 1993) ("Because of the limited marketability of their shares and the right of the majority shareholders to control corporate decision-making in closely held corporations, minority shareholders are restricted in their ability to realize the value of their investment, whether it be in the form of salary, dividends, or proceeds from a sale of their stock. Callahan depended, as minority shareholders generally do, on the Fultons' treating him fairly.") (apostrophe in original). Enright argues that plaintiff's salary was not denied, but merely deferred, and that this occurred as a result of Vaxin's poor financial condition. (Doc. 19 at 19.) Plaintiff disputes Vaxin's inability to pay, and argues that since deferral has lasted "years," it might as well be considered denied. (Doc. 20 at 6.) Plaintiff is right: holding salary hostage for years is effective to oppress a minority shareholder whether or not it is finally released. Furthermore, plaintiff has alleged that he

17

was denied the value of salaried employment unfairly because he was terminated without prior board approval. (Doc. 14 ¶¶ 29-31; doc. 20 at 6.)

Defendant's Motion to dismiss plaintiff's claim for breach of fiduciary duty is granted without prejudice to allow plaintiff to make the necessary allegations with regard to the status of the parties.[11] Plaintiff also will be granted leave to amend his complaint to allege facts sufficient to state a claim for breach of fiduciary duty with respect to Enright's other actions.

## CONCLUSION

In light of the reasons stated above, defendants' motion, (doc. 19), is due to be granted. Plaintiff's claims for violation of the FCA against both defendants and FCA retaliation against Enright will be dismissed with prejudice. Plaintiff will be granted leave to amend his complaint to sufficiently state a claim for relief on the other counts defendant moved to dismiss, and should he choose to do so, he should file one completely-integrated amended complaint. An order in conformance herewith will be entered simultaneously with this memorandum opinion. Plaintiff's claims for breach of contract, breach of implied-in-fact

---

[11]In their reply brief, defendants argue that plaintiff's claim should be dismissed because he did not allege that Enright is a majority shareholder or that Vaxin is a closely held corporation. (Doc. 26 at 7-8 ¶ 13.) Plaintiff merely alleged that Vaxin is a corporation and Enright was its President and CEO. (Doc. 14 ¶ 6.) Defendants do not cite precedent saying that such allegations are necessary in the complaint to sustain a claim for oppression based on a fiduciary duty owed by a majority shareholder to a minority shareholder in a closely held corporation. The court notes that plaintiff did not get an opportunity to respond to this newly-raised argument. However, the court is of the opinion that such facts would be necessary.

contract, unjust enrichment, and race discrimination in violation of 42 U.S.C. § 1981 were

not subject to dismissal and remain pending.

    **DONE** this 31st day of March, 2015.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE