FILED

2015 Mar-31  PM 03:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DE CHU CHRISTOPHER TANG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:13-cv-401-SLB** |
| | ) | |
| **VAXIN, INC., and WILLIAM J. ENRIGHT,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION</u>**

This case is presently pending before the court on the Motion for a Preliminary Injunction by Defendant Vaxin Inc. (Doc. 29.)[1]  Plaintiff filed this action against defendants Vaxin Inc. and William J. Enright alleging, among other things, False Claims Act violations, fraud, and breach of contract. (*See* Doc. 14.) Defendant Vaxin Inc. filed this Motion for a Preliminary Injunction seeking to enjoin plaintiff "from using and disclosing Vaxin's intellectual property in violation of an Employee Innovation, Non-Competition and Non-Soliciation Agreement with Vaxin, . . . enjoin[] him from making threatening or other communications to Vaxin's directors, officers, shareholders, employees, investors or those otherwise in privity with Vaxin[,] and . . . order[] him to sign and file a power of attorney in support of a Korean patent application to prevent its abandonment as required by this agreement." (Doc. 29 at 1.)  Upon consideration of the record, the submissions of the parties,

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

and the relevant law, the court is of the opinion that defendant's Motion for a Preliminary Injunction, (Doc. 29), is due to be denied.

## I. PRELIMINARY INJUNCTION STANDARD

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal quotations and citations omitted). Further, granting a preliminary injunction "is the exception rather than the rule." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotations and citations omitted). In this Circuit –

> In order to prevail on an application for a preliminary injunction, the plaintiff must clearly establish all of the following requirements:
>
> (1) ... a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (quoting *Am. Civil Liberties Union of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). "In exercising their sound discretion, courts of equity should pay particular regard for the public

consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24

(quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

## II.  <u>FACTUAL BACKGROUND</u>

During his employment with Vaxin, plaintiff signed an Employee Innovation, Non-

Competition and Non-Solicitation Agreement ("the Agreement"), (*see* Doc. 29-1 at 18),

which defendant explains as follows:

> Under the Agreement, Plaintiff agreed that all "Proprietary Information," as
> defined by the Agreement, was the sole property of Vaxin and that Vaxin was,
> and would be, the sole and exclusive owner of all patents, copyrights, mass
> works, trade secrets and other rights in any "Proprietary Information."
> Plaintiff also assigned to Vaxin any and all rights, title and interest that he
> had, or might acquire, in any "Proprietary Information" and agreed not to
> disclose or use such information without Vaxin's consent except as necessary
> to perform his regular duties as an employee of Vaxin. Paragraph 2 of the
> Agreement sets forth these agreements:

>> 2.  <u>Ownership and Nondisclosure of Proprietary Information</u>. All
>> Proprietary Information is the sole property of Vaxin, Vaxin's assigns
>> and Vaxin's customers. Vaxin, Vaxin's assigns and Vaxin's customers
>> will be the sole and exclusive owner of all patents, copyrights, mask
>> works, trade secrets and other rights in the Proprietary Information. I
>> hereby do and will assign to Vaxin all rights, title, and interest I may
>> have or acquire in the Proprietary Information. At all times, both during
>> my employment by Vaxin and after termination of such employment,
>> I will keep in confidence and trust all Proprietary Information, and I
>> will not use or disclose any Proprietary Information or anything directly
>> relating to Proprietary Information without the written consent of
>> Vaxin, except as may be necessary in the ordinary course of performing
>> my duties as an employee of Vaxin.

> Further, under the Agreement, Plaintiff agreed to assign, and did in fact assign,
> to Vaxin all of his right, title and interest in any and all "Innovations," as
> defined by the Agreement, as well as any associated intellectual property rights
> that he might solely or jointly conceive, reduce to practice, create, derive,

3

develop or make during his employment with Vaxin. Paragraphs 4 and 5 of the Agreement set forth these agreements:

4. <u>Innovations</u>. As used in this Agreement, the terms "Innovations" means all processes, machines, manufactures, compositions of matter, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyright laws), moral rights, mask works, trademarks, trade names, trade dress, trade secrets, know-how, ideas (whether or not protectable under trade secret laws), and all other subject matter protectable under patent, copyright, moral right, mask work, trademark, trade secret, or other laws.

5. <u>Assignment of Innovations</u>. I hereby agree promptly to disclose and describe to Vaxin, and I hereby do and will assign to Vaxin or Vaxin's designee my entire right, title, and interest in and to each of the Innovations, and any associated property rights, which I may solely or jointly conceive, reduce to practice, create, derive, develop, or make during the period of my employment with Vaxin, which either (a) relate, at the time of conception, reduction to practice, creation, derivation, development, or making of such Innovation, to Vaxin's business or actual or demonstrably anticipated research or development, or (b) were developed on any amount of Vaxin's time or with the use of any of Vaxin's equipment, supplies, facilities, or trade secret information, or (c) resulted from any work I performed for Vaxin.

Also, Plaintiff agreed under the Agreement to perform all acts that Vaxin deemed necessary or desirable to enable it to obtain and enforce its rights, title, benefits and enjoyment "throughout the world" in "Proprietary Information" and in "Innovations" assigned to Vaxin, including the "execution of documents and assistance … in the filing, prosecution, registration, and memorialization of assignment of any applicant patents." Paragraph 6 sets forth this agreement:

6. <u>Cooperation in Perfecting Rights to Propriety Information and Innovations</u>. I agree to perform, during and after my employment, all acts deemed necessary or desirable by Vaxin to permit and assist Vaxin,

4

at Vaxin's expense, in obtaining and enforcing the full benefits, enjoyment, rights, and title throughout the world in the Proprietary Information and Innovations assigned to Vaxin. Such acts may include, but are not limited to, execution of documents and assistance or cooperation (a) in the filing, prosecution, registration, and memorialization of assignment of any applicant patents, copyrights, mask work, or other applications, (b) in the enforcement of any applicable patents, copyrights, mask work, moral rights, trade secrets, or other proprietary rights, and (c) in other legal proceedings related to the Proprietary Information or Innovations.

Finally, under the Agreement, Vaxin and Plaintiff acknowledged and agreed that violation of the Agreement would result in irreparable and continuing damage to Vaxin and that Vaxin would be entitled to injunctive relief or a decree for specific performance in addition to monetary damages.

(Doc. 29 ¶¶ 9-12.) Plaintiff developed a technology called "DVD" during his employment with Vaxin, and defendant contends this technology falls within the definition of both "Proprietary Information" and "Innovation" under the Agreement. (*Id.* ¶13.) Since the termination of plaintiff's employment with Vaxin, plaintiff has conducted research and published at least two articles about the DVD technology.[2] (*Id.* ¶ 19; *see* Doc. 29-1 Ex. D & E.) At no time after plaintiff's employment ended has defendant consented to plaintiff using the DVD technology to conduct research or to disclose any information relating to the technology. (*Id.* ¶ 20.)

---

[2] Defendant attached two published articles written by plaintiff that discuss the DVD technology but did not clarify if these are the only two published articles plaintiff wrote on the topic. (*See* Doc. 29 ¶ 19.)

5

## III.  DISCUSSION

**A. Request for Order to Sign and File Power of Attorney**

The court first notes that defendant's Motion is moot as to its request for an order requiring plaintiff to sign and file a power of attorney in support of a Korean patent application. Plaintiff executed a power of attorney on September 6, 2014. (*See* Doc. 33 at 5.) Therefore, defendant's Motion on this point will be denied as moot.

**B. Request to Enjoin the Use and Disclosure of Vaxin's Intellectual Property**

Plaintiff next seeks a preliminary injunction enjoining plaintiff from using and disclosing its intellectual property in violation of the Employee Innovation, Non-Competition and Non-Solicitation Agreement ("the Agreement") with Vaxin. (Doc. 29 at 1.)

For the court to grant the requested injunction, defendant must show that all of the following elements are met:

> (1) ... a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (quoting *Am. Civil Liberties Union of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). The court finds that defendant has failed to do so.

Count One of defendants' Counterclaim alleges plaintiff breached the Agreement by using and disclosing Proprietary Information and Innovations belonging to Vaxin. While the

court finds that defendant likely will succeed on the merits of this claim because plaintiff appears to have validly assigned any rights he may have had in the DVD technology to Vaxin when he signed the Agreement, the court need not decide the issue. Defendant's failure to show irreparable injury is dispositive of defendant's Motion on this issue. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.2000) ("Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.").

Defendant contends it "will suffer irreparable harm and damage in the absence of preliminary injunctive relief [because] . . . Vaxin will lose the exclusivity of [the DVD] technology and suffer dilution and confusion regarding its rights to it." (Doc. 19 ¶ 33.) Defendant further alleges that plaintiff's use of the technology to conduct research and publish articles "undermine[s] Vaxin's ability to raise funds and continue its research and development because these activities disparage and call into question Vaxin's ownership of the DVD technology." (*Id.* ¶ 34.) The only specific injury defendant points to is "a potential transaction with a third party [that] could have fully funded Vaxin," which "fell through in part" due to plaintiff's actions. (*Id.* ¶ 34.)

Defendant has failed to show why ordinary contract remedies are insufficient to protect its ordinary contract rights. Defendant acknowledges that the potential transaction, discussed above, fell through only "in part" due to plaintiff's action, and defendant has not shown that money damages cannot adequately compensate it for the alleged financial loss

it incurred as a result of the unsuccessful deal. The court finds that defendant has not identified an injury that monetary damages could not correct at a later date.

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Diamond Power Intern., Inc. v. Clyde Bergemann, Inc.*, 370 F. Supp. 2d 1339, 1349 (N.D. Ga. 2005) (quoting *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1520 (11th Cir.1983)); *see also Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001) ("To the extent that Suntrust will suffer monetary harm from the infringement of its copyright, harms that may be remedied through the award of monetary damages are not considered 'irreparable.'"). See also *Diamond Power Intern., Inc.*, 370 F. Supp. 2d at 1348-48, for its discussion of *Salsbury Labs., Inc. v. Merieux Labs, Inc.*, 735 F. Supp. 1537, 1543 (M.D. Ga. 1987):

> In that case, the plaintiff manufacturer of certain vaccines sued and alleged that the defendant had misappropriated its trade secrets which it used to create a competing vaccine. The plaintiff sought a preliminary injunction to prohibit the defendant from selling a competing product. The plaintiff argued that unless the court enjoined the defendant from selling the competing vaccine, it would lose large profits and that its image, reputation and goodwill among its customers would be damaged. The district court rejected the plaintiff's argument and concluded that because the plaintiff could be compensated for lost sales through monetary damages, injunctive relief was not appropriate.

*Id.* (internal citations omitted).

8

While defendant attempts to align this case with *Medi-Weightloss Franchising USA, LLC v. Medi-Weightloss Clinic of Boca Raton, LLC*, No. 8:11-cv-2437-T-30MAP, 2012 WL 260902, (M.D. Fla. Jan. 3, 2012), the comparison is too tenuous. In *Medi-Weightloss Franchising*, the plaintiffs sought a preliminary injunction against defendants Dr. Martinez and Medi-Boca to enjoin the defendants from continued operation of a weightloss clinic in accordance with a non-compete agreement, from disclosing or publishing plaintiffs' confidential information, from using plaintiffs' proprietary and copyrighted information, from using programs that were confusingly similar to plaintiffs', and from using "Medi" as a trade name. *Id.* at *1. The court granted a preliminary injunction, finding that plaintiffs had shown irreparable harm from, among other things, "hav[ing] to compete with former franchisees and employees who agreed not to engage in such competition, . . . los[ing] the exclusivity and confidentiality of its proprietary and confidential information, . . . [and] suffer[ing] dilution and confusion associated with its intellectual property as well as its products and services. *Id.* at *8.

Plaintiff's scientific discussion of the DVD technology in published articles is not analogous to the *Medi-Weightloss Franchising* plaintiffs' injury from the defendant's continued competition and use of plaintiffs' trademarks. Further defendant has not shown that it has, in fact, "suffer[ed] dilution and confusion" regarding its rights to the DVD technology based on the articles and research already published or that plaintiff intends to publish more articles that could cause defendant to "lose exclusivity of [that] technology"

in the future. Simply because plaintiff, who defendant acknowledges developed the DVD technology, discusses the technology in publications does not mean that potential investors will assume that plaintiff holds the rights to the technology.

Additionally, defendant states that, under a clause in the Agreement governing "Injunctive Relief," a violation of the Agreement necessarily results in irreparable damage to Vaxin. (Doc. 29 ¶ 12.) The relevant clause provides that a "breach of any of the promises or agreements contained herein will result in irreparable and continuing damage to Vaxin for which there will be no adequate remedy at law, and Vaxin will be entitled to injunctive relief and/or specific performance, and such other relief as may be proper (including monetary damages if appropriate)." (Doc. 29-1 at 17.) However, the court has not found that plaintiff breached the Agreement, as that decision is reserved for a later stage in the proceedings. Therefore, at this stage, this provision in the Agreement does not overcome binding Eleventh Circuit case law holding that "harms that may be remedied through the award of monetary damages are not considered 'irreparable.'" *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001).

If defendant ultimately prevails, an adequate remedy for financial harm incurred as a result of plaintiff's alleged use and disclosure of the DVD technology will be available. The court also notes that its denial of defendant's Motion is without prejudice to defendant's right to seek a preliminary injunction if future circumstances warrant it or if defendant can show non-monetary, irreparable harm under the current circumstances. Further, by denying

defendant's Motion, the court does not imply that plaintiff is not required to abide by the contractual obligations of the Agreement. Based on the foregoing, defendant's Motion on this issue will be denied.

**C. Request to Enjoin Plaintiff from Communicating with Defendants**

Lastly, defendant asks the court to enjoin plaintiff "from making threatening or other communications to Vaxin's directors, officers, shareholders, employees, investors or those otherwise in privity with Vaxin." (Doc. 29 at 1.) Because Vaxin seeks a preliminary injunction on behalf of individuals, the court must first determine if Vaxin has standing to move for the injunction. To have standing to move for an injunction, a party must have suffered an "injury in fact —an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical,"—that is fairly traceable to the challenged conduct, and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992) (internal quotations and citation omitted). An association attempting to bring a claim on behalf of its members must also meet the following requirements to have standing: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food and Commercial Workers Union Local*

11

*751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Wash. State Apple Adver. Com'n*, 432 U.S. 333, 343 (1977)).

Defendant has not demonstrated that its "directors, officers, shareholders, employees, agents, attorneys, investors, and those otherwise in privity with Vaxin" have suffered an "injury in fact" that is concrete and particularized and actual or imminent, as opposed to hypothetical, from the alleged threatening communications plaintiff has made. Therefore, defendant Vaxin cannot meet the first prong of the associational standing test, requiring that the individuals on whose behalf Vaxin seeks the injunction "would otherwise have standing to sue in their own right."

However, even if Vaxin had standing, the court finds that the requirements for a preliminary injunction on this issue have not been met. William Enright,[3] the CEO of Vaxin, testified that he has "genuine fears about what Dr. Tang could do to harm us" because "in recent history patent attorneys with the firm of Wood, Phillips, Katz, Clark & Mortimer were shot and killed by a disgruntled client," (Doc. 29-1 at 9), and defendant characterized plaintiff's communications as "death threats," (Doc. 29 ¶ 22.) As evidence of this concern, defendant attached an email from plaintiff in which plaintiff states as follows:

> Dear Board,
>
> I offered you an olive branch to settle our conflict by following science, reason, and evidence wherever they lead without involving attorneys in my

---

[3] Enright is a defendant in this action but is not a party to this Motion.

> email letter dated 11 May 2014 (copied below). However, the only response
> I received was an attorney's threat dated 7 August 2014 (copied below). If
> Board should support this man-eating crime, the only option I have is to
> schedule a meeting between you and God. Overall, I did not choose war;
> war chose me.
>
> The immediate action I have to take is to warn all the funding agencies and
> investors not to support the crime and any lawsuit associated with it. I
> believe it is illegal to spend federal money to kill an inventor for feeding a
> pirate. I am truly sorry that all the trust, money, and hard work invested into
> Vaxin over so many years have to end up this way.
>
> DC Tang

(Doc. 29-1 at 8-9.) While a death threat would create serious alarm likely necessitating the

involvement of appropriate law enforcement personnel, plaintiff's communications (at least

those provided in the record) do not appear to threaten the safety of defendants or any other

party in privity with Vaxin. The court questions the extent to which defendants are

concerned for the safety of individuals in privity with Vaxin because defendant briefly raises

this concern in the argument section of its brief, stating only that "granting the requested

relief [would] promote[] the public interest by ensuring that proper social order is

maintained [and] that proper business order is maintained," and that "[p]laintiff's threatening

communications . . . undermine Vaxin's ability to attract investment and obtain grants

because of the potential risks associated with them."  (*See* Doc. 29 ¶¶ 34, 37.)

At most, plaintiff's communications to defendants may be improper and annoying,

but this injury is not the type of irreparable injury for which courts grant the "extraordinary"

remedy of a preliminary injunction. Because the court finds that plaintiff's communications

do not suggest a serious threat, the court finds that the harm to plaintiff's rights to speak freely in litigation would significantly outweigh the annoyance or inconvenience to defendants from receiving plaintiff's hyperbolic communications and that an injunction would also be adverse to the public interest of protecting speech. *See, e.g., Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Ass'n*, 2012 WL 137851, at *19 (11th Cir. Jan. 18, 2012) ("If the Court were to grant the requested preliminary injunctive relief, it seems as though defendant will suffer substantial harm. Particularly, defendant's free speech rights will be compromised, and the Supreme Court has noted that interference with free speech, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Therefore, the court finds that defendant's request for the court to enjoin plaintiff from sending threatening communications to individuals connected with Vaxin is due to be denied.

## IV.  CONCLUSION

Defendant Vaxin's Motion for a Preliminary Injunction, (Doc. 29), is due to be denied. An order in accordance will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 31st day of March, 2015.

*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE

14